UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DEREK MASTROMONACO,                                  :
                       Plaintiff,                  :
                                      :    **OPINION AND ORDER**
v.                                                   :
                                      :    15 CV 10166 (VB)
COUNTY OF WESTCHESTER; TIMOTHY                        :
JOYCE, Individually; GEORGE WINSMAN,                  :
Individually; ROBERT PAVONE, Individually;            :
and "JOHN DOE No. 1", JOHN DOE No. 2",                :
JOHN DOE No. 3", names Being fictitious               :
intended to be police Officers of the                :
Westchester County Department of Public              :
Safety, Individually,                                 :
                        Defendants.                :
------------------------------------------------------------x

Briccetti, J.:

       Plaintiff Derek Mastromonaco brings this action under 42 U.S.C. § 1983, alleging

defendants violated his constitutional rights in connection with his November 7, 2013, arrest and

subsequent detention.

       Now pending are plaintiff's motion for partial summary judgment (Doc. #88), and

defendants County of Westchester (the "County"), Officer Timothy Joyce, Officer George

Winsman, and Sergeant Robert Pavone's cross-motion for summary judgment.  (Doc. #89).

       For the reasons set forth below, plaintiff's motion is DENIED, and defendants' cross-

motion is GRANTED IN PART and DENIED IN PART.

       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

**BACKGROUND**

       The parties have submitted briefs, statements of fact pursuant to Local Civil Rule 56.1,

declarations and affidavits ("Aff."), and supporting exhibits, which reflect the following factual

background.

On the evening of Thursday, November 7, 2013, at approximately 7:00 p.m., plaintiff, then twenty-three years old, and non-party Nathan Liebert, then sixteen years old, were in plaintiff's car in the parking lot of Walter Panas High School (the "School") in the Town of Cortlandt. According to plaintiff, he and Liebert were on School grounds to play frisbee, but according to Liebert, they were there to smoke marijuana.

Sgt. Pavone was the patrol supervisor for the Westchester County Department of Public Safety that evening. Seeing headlights in the School parking lot, he drove through to survey the scene. Sgt. Pavone testified the School parking lot "is an area known for criminal activity." (Pavone Dep. at 62).

Sgt. Pavone observed plaintiff's car "a considerable distance away from all the other activities" on the School grounds. (Pavone Dep. at 27). He testified that when he drove by plaintiff's car, plaintiff and Liebert "immediately looked down." Id. In addition, the vehicle's headlights flashed on and off, indicating to him there was "car trouble" or "difficulty operating the functions of the car." (Id. at 61-62). After observing plaintiff's car for several minutes, Sgt. Pavone drove closer, then approached on foot. When plaintiff rolled down his window, Sgt. Pavone "smelled a very strong odor of marijuana." (Id. at 36).

Sgt. Pavone asked plaintiff a few questions, and plaintiff began to drive away. Sgt. Pavone ordered plaintiff to stop. According to Sgt. Pavone, plaintiff then "exited the vehicle extremely quickly and unexpectedly," and responded to questions with a series of random numbers, and remarks about penguins. (Pavone Dep. at 43). In the passenger seat, Liebert was "fidgeting" with something at his feet. (Pl. Resp. to Defs. 56.1 ¶ 26).

Based on the smell of marijuana, and plaintiff's appearance and actions, Sgt. Pavone believed plaintiff was under the influence of drugs. Sgt. Pavone testified he was "concerned" for

his own safety, and that plaintiff would not return to his car. (Pavone Dep. at 131). Through plaintiff's open car door, Sgt. Pavone visually checked the center console for weapons, and saw the remnants of marijuana cigarettes.

Sgt. Pavone testified he repeatedly asked plaintiff to sit down, but he refused to do so. Therefore, Sgt. Pavone handcuffed plaintiff, and "patted him down for safety." (Pavone Dep. at 54). Sgt. Pavone called for backup, and Officer Joyce arrived.[1]

According to plaintiff, Officer Joyce punched him "to the ground," asked if he "knew what [his] Sixth Amendment was, and then punched [him] in the head" three times. (D. Mastromonaco Dep. at 194). According to Sgt. Pavone and Officer Joyce, plaintiff stumbled and fell to the ground, and Officer Joyce assisted him. Liebert testified he did not observe Officer Joyce punching plaintiff.

Sgt. Pavone placed plaintiff in the back seat of his police car, and called Liebert's mother, who retrieved Liebert. Sgt. Pavone and Officer Joyce then inventoried plaintiff's car for impound and found an orange frisbee containing two rolled marijuana cigarettes and loose marijuana.

Following the search of his vehicle, plaintiff was transported to police headquarters, where Sgt. Pavone and Officer Joyce booked him. It is undisputed Officer Winsman offered to administer a chemical test to plaintiff on three separate occasions, and plaintiff did not respond.

Non-party Sgt. McNulty arrived for duty as the desk sergeant at 10:30 p.m. During the booking procedure, either Officer Joyce, Officer Winsman, or Sgt. Pavone told Sgt. McNulty plaintiff appeared to be under "a heavy influence of drugs." (McNulty Dep. at 59). It is

---

[1] According to plaintiff, a uniformed school resource officer, Westchester County Lieutenant Cetina, and officers from the New York state police, and the City of Peekskill, also arrived at the School parking lot in response to Sgt. Pavone's call for assistance.

undisputed Sgt. McNulty observed plaintiff speaking about penguins and Iranians, and that plaintiff failed to provide coherent answers to Sgt. McNulty's questions.

According to Sgt. McNulty, plaintiff's behavior was not typical for someone under the influence of marijuana. He testified he was concerned plaintiff might have taken a synthetic substance called "K-2," which is "very dangerous" and can cause seizures and loss of consciousness. (McNulty Dep. at 68). Sgt. McNulty believed plaintiff "presented a serious threat of harm" to himself and others. (McNulty Dep. at 151−52). Because plaintiff was "unable to answer in an intelligent way" whether he needed medical attention, Sgt. McNulty decided to "err on the side of caution and get him evaluated by a medical doctor." (Id. at 72).

Therefore, around 1:45 a.m. on November 8, 2013, plaintiff was taken to Westchester Medical Center (the "Hospital"), and was placed under observation in the emergency department. Notes from plaintiff's admission indicate he "gave bizarre answers to questions," exhibited an "odd affect" and was "intermittently appropriate and then tangential with flight of ideas." (Martin Decl. Ex. 7 at 2). Plaintiff's urine drug screening was negative except for marijuana. (Id.). According to the examining physician's notes, plaintiff's father, Ralph Mastromonaco, told medical staff plaintiff smoked marijuana every day, and it caused him to "become incoherent." (Id.) Plaintiff also was evaluated by psychiatry staff, who deemed plaintiff "without decision making capacity." (Id.). The Hospital's "plan" reflects plaintiff was to be "admitted to psych inpatient once medically cleared." (Id.)

At an unknown time on November 8, 2013, Robert Ponzini, Town Justice of the Mount Pleasant Justice Court, arraigned plaintiff at the Hospital. Plaintiff contends Justice Ponzini did not arraign him, but merely "signed an order committing [him] to the custody of the county jail." (Pl. Resp. to Defs. 56.1 ¶ 52). Plaintiff was charged with possession of marijuana, driving while

under the influence of drugs, trespass, and endangering the welfare of a child.  Justice Ponzini set bail at $15,000 cash or a $20,000 bond.

Nursing notes from the Hospital indicate plaintiff was discharged to the care of law enforcement at 6:31 p.m on Friday, November 8, 2013.  Plaintiff spent the weekend in the County jail, and was released on bond on Monday, November 11, 2013.

Ultimately, the charges against plaintiff were dismissed.

Pursuant to 42 U.S.C. § 1983, plaintiff asserts nine causes of action related to his arrest and detention:  (i) unlawful stop, seizure, and false arrest; (ii) unlawful search; (iii) excessive force; (iv) unlawful detention and confinement; (v) excessive bail; (vi) unlawful imprisonment; (vii) malicious prosecution; (viii) failure to train officers with respect to anxiety and emotional disturbance; and (ix) failure to supervise.

## DISCUSSION

I.  <u>Standard of Review</u>

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 248.  The Court "is not to resolve disputed issues of fact but to assess whether

there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir.

2010) (citation omitted).  It is the moving party's burden to establish the absence of any genuine

issue of material fact.  Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir.

2010).

      If the non-moving party has failed to make a sufficient showing on an essential element

of his case on which he has the burden of proof, then summary judgment is appropriate.  Celotex

Corp. v. Catrett, 477 U.S. at 323.  If the non-moving party submits "merely colorable" evidence,

summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249−50.  The

non-moving party "must do more than simply show that there is some metaphysical doubt as to

the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."

Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted).  The

mere existence of a scintilla of evidence in support of the non-moving party's position is

likewise insufficient; there must be evidence on which the jury could reasonably find for him.

Dawson v. Cty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

      On summary judgment, the Court construes the facts, resolves all ambiguities, and draws

all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc.

v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a

reasonable inference could be drawn in favor of the non-moving party on the issue on which

summary judgment is sought, summary judgment is improper.  See Sec. Ins. Co. of Hartford

v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

      In deciding a motion for summary judgment, the Court need only consider evidence that

would be admissible at trial.  Nora Bevs., Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d

Cir. 1998).

II.     Plaintiff's First Cause of Action: Unlawful Stop, Seizure, and False Arrest

Defendants argue plaintiff's stop, seizure, and arrest did not violate the Fourth Amendment.

The Court agrees.

The Fourth Amendment, which applies to the states through the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'"  U.S. Const. Amend. IV.  "[T]he first step in any Fourth Amendment claim (or, as in this case, any section 1983 claim predicated on the Fourth Amendment) is to determine whether there has been a constitutionally cognizable seizure." Medeiros v. O'Connell, 150 F.3d 164, 167 (2d Cir. 1998).

A.     Stop and Seizure

Sgt. Pavone's initial approach of plaintiff's car, and subsequent order that plaintiff stop driving away, constitute a seizure within the meaning of the Fourth Amendment.  See Arizona v. Johnson, 555 U.S. 327, 327 (2009) ("For the duration of a traffic stop . . . a police officer effectively seizes everyone in the vehicle, the driver and all passengers.") (internal quotation omitted); United States v. Simmons, 560 F.3d 98, 105−06 (2d Cir. 2009) ("A police officer's order to stop constitutes a seizure if a reasonable person would have believed that he was not free to leave, and the person complies with the officer's order to stop.") (internal citation and quotation omitted).

"[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)).

Under the law set forth in <u>Terry v. Ohio</u>, reasonable suspicion to conduct an investigatory stop exists when a law enforcement officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." <u>Terry v. Ohio</u>, 392 U.S. at 21. "While the officer may not rely on an inchoate and unparticularized suspicion or hunch, he is entitled to draw on his own experience and specialized training to make inferences from and deductions about the cumulative information available to [him] that might well elude an untrained person." <u>United States v. Padilla</u>, 548 F.3d 179, 187 (2d Cir. 2008) (internal quotation omitted).

"A court reviewing whether an officer possessed reasonable suspicion to conduct a <u>Terry</u> stop must consider the totality of the circumstances surrounding the stop and evaluate those circumstances through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." <u>United States v. Bell</u>, 2018 WL 2123254, at *2 (2d Cir. May 9, 2018) (summary order) (internal quotation omitted). Nervous, evasive behavior, and the fact that the stop occurred in a high crime area are "among the relevant contextual considerations in a <u>Terry</u> analysis." <u>Illinois v. Wardlow</u>, 528 U.S. at 124.

Here, Sgt. Pavone testified regarding specific and articulable facts that led him to believe criminal activity was afoot in plaintiff's car. First, he was aware the School parking lot was an "area that is known for criminal activity." (Pavone Dep. at 62). In addition, plaintiff's car was parked "a considerable distance away from all the other activities" on the School grounds, after the close of the school day. (<u>Id</u>. at 27). Further, Sgt. Pavone noted plaintiff and Liebert were reluctant to make eye contact when he drove past. Finally, for the several minutes Sgt. Pavone observed plaintiff's vehicle, plaintiff and Liebert remained in the parked car, rather than leaving

the parking lot, or leaving the car to participate in the athletic or other activities then taking place on the School grounds.

Therefore, based on the totality of the circumstances, it is clear as a matter of law that Sgt. Pavone possessed reasonable suspicion to conduct a <u>Terry</u> stop.

      B.    <u>False Arrest</u>

"Indisputably, an arrest is a seizure." <u>Bryant v. City of New York</u>, 404 F.3d 128, 136 (2d Cir. 2005). "To establish a claim for false arrest under [Section] 1983, a plaintiff must show that 'the defendant intentionally confined him without his consent and without justification.'" <u>Escalera v. Lunn</u>, 361 F.3d 737, 743 (2d Cir. 2004) (quoting <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2d Cir. 1996)).

A plaintiff cannot prevail on a false arrest claim if the arresting officer had probable cause to arrest. <u>Singer v. Fulton Cty. Sheriff</u>, 63 F.3d 110, 118 (2d Cir. 1995). Probable cause exists if officers have "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." <u>Panetta v. Crowley</u>, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation omitted).

"Probable cause does not require absolute certainty." <u>Boyd v. City of New York</u>, 336 F.3d 72, 76 (2d Cir. 2003). Indeed, "some exculpatory evidence does not make an arrest illegal when the totality of evidence still establishes probable cause to believe that the suspect committed the crime." <u>Stansbury v. Wertman</u>, 721 F.3d 84, 94 (2d Cir. 2013).

To defeat a false arrest claim, an arresting officer need not have had probable cause to arrest the plaintiff for the specific offense invoked by the officer at the time of the arrest, or the offense with which the plaintiff was charged. <u>Devenpeck v. Alford</u>, 543 U.S. 146, 153 (2004);

Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006). As long as there was probable cause to arrest the plaintiff for some offense, a false arrest claim will fail. Jaegly v. Couch, 439 F.3d at 152.

"Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997).

Moreover, even if the arrest was not supported by probable cause, a police officer will still prevail in a false arrest case under the doctrine of qualified immunity if there was "arguable probable cause" to arrest. Escalera v. Lunn, 361 F.3d at 743.

 "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015) (internal quotation omitted). The arguable probable cause standard is "more favorable to the officers than the one for probable cause," Ackerson v. City of White Plains, 702 F.3d 15, 21 (2d Cir. 2012) (internal quotation omitted), as "[t]his forgiving standard protects all but the plainly incompetent or those who knowingly violate the law." Provost v. City of Newburgh, 262 F.3d 146, 160 (2d Cir. 2001) (internal quotation omitted).

Applying these standards, the Court finds as a matter of law that Sgt. Pavone had probable cause, or at a minimum, arguable probable cause, to arrest plaintiff.

Sgt. Pavone testified he "smelled a very strong odor of marijuana" when plaintiff rolled down his window to speak with him. (Pavone Dep. at 36). Sgt. Pavone's testimony is supported by the undisputed fact that loose marijuana was recovered from the vehicle. Sgt. Pavone's testimony is further supported by Liebert's testimony that plaintiff and his car smelled like marijuana, and if the car windows were down, it was possible "to smell marijuana inside the

vehicle." (Liebert Dep. at 72). In addition, it is undisputed plaintiff began driving his vehicle after Sgt. Pavone approached plaintiff's vehicle and spoke to him through the driver's side window.

Plaintiff contends he did not smoke marijuana on November 7, 2013, and his vehicle did not smell of marijuana. Plaintiff's testimony is inconsistent with Sgt. Pavone and Liebert's testimony, as well as the medical records reflecting plaintiff's urine drug screening was positive for marijuana. However, even if Sgt. Pavone was mistaken regarding the marijuana odor emanating from plaintiff's vehicle, that would not undermine the Court's finding he had probable cause. See Williams v. Town of Greenburgh, 535 F.3d 71, 79 (2d Cir. 2008) ("a mistake about relevant facts . . . does not undermine the existence of probable cause"); see also Kent v. Thomas, 464 F. App'x 23, 25 (2d Cir. 2012) (summary order) ("For false arrest claims, the probable cause inquiry focuses on the facts reasonably believed by the officers at the time of the arrest; even if it later turns out that the officers were mistaken, a mistake of fact would not undermine probable cause so long as their belief was objectively reasonable.").

Based on the above, the Court concludes as a matter of law that Sgt. Pavone had probable cause, or at a minimum, arguable probable cause, to arrest plaintiff for marijuana possession, and driving will under the influence of drugs.

Accordingly, plaintiff's claims for unlawful stop, seizure, and arrest are dismissed.

III.     Plaintiff's Second Cause of Action:  Unlawful Search

Defendants argue it was lawful for Sgt. Pavone to pat down plaintiff, and for Sgt. Pavone and Officer Joyce to search plaintiff's car.

The Court agrees.

With respect to the pat down, a police officer may conduct a warrantless search of a person incident to a valid arrest based on probable cause. See United States v. Robinson, 414 U.S. 218, 235 (1973). Because the Court finds probable cause existed to arrest plaintiff for marijuana possession, and driving while under the influence of drugs, rendering the arrest valid, the search of plaintiff's person did not violate the Fourth Amendment.[2]

With respect to the vehicle search, it is undisputed plaintiff's vehicle was inventoried for impound. (See Pl. Resp. to Defs. 56.1 ¶ 35; Pavone Decl. ¶ 36; Joyce Decl. ¶ 15).

An "inventory search constitutes a well-defined exception to the warrant requirement" under the Fourth Amendment. Illinois v. Lafayette, 462 U.S. 640, 643 (1983). However, the Court has stressed the importance of conducting inventory searches under standard procedures to prevent inventory searches from becoming "a ruse for a general rummaging in order to discover incriminating evidence." Florida v. Wells, 495 U.S. 1, 4 (1990).

Here, Sgt. Pavone stated he and Officer Joyce "conducted an inventory search as part of police procedures." (Pavone Aff. ¶ 36). Officer Joyce then prepared in impound report, which Sgt. Pavone reviewed. Therefore, the vehicle search conducted pursuant to a standardized procedure falls within the inventory exception to the Fourth Amendment warrant requirement.

Plaintiff's argument that defendants "have never tested" the contents of the vehicle's ashtray is entirely beside the point. (Pl. Opp'n at 11). An inventory search is not performed "to detect crime or to serve criminal prosecutions. It is done for quite different reasons: (1) to protect the owner's property while it is in police custody; (2) to protect the police against spurious claims of lost or stolen property; and (3) to protect the police from potential

---

[2]     Even if defendants "had only arguable probable cause to arrest, the search incident to arrest cannot give rise to liability." Butler v. Brito, 2017 WL 2116687, at *5 n.4 (S.D.N.Y. May 15, 2017).

danger." United States v. Lopez, 547 F.3d 364, 369 (2d Cir. 2008).  As such, there is no requirement to test every item seized in an inventory search.

Accordingly, plaintiff's unlawful search claim is dismissed.

IV.     Plaintiff's Third Cause of Action: Excessive Force

Defendants argue they are entitled to summary judgment as to plaintiff's excessive force claim because any force used in connection with plaintiff's arrest was "de minimis." (Defs. Br. at 11).

The Court disagrees.

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest."  Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)).  "The Fourth Amendment test of reasonableness 'is one of objective reasonableness.'"  Bryant v. City of New York, 404 F.3d 128, 136 (2d Cir. 2005) (quoting Graham v. Connor, 490 U.S. at 399).

Therefore, "the inquiry is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake."  Tracy v. Freshwater, 623 F.3d at 96.  This assessment may include the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Graham v. Connor, 490 U.S. at 396.  It is typically the jury's "unique task . . . to determine the amount of force used, the injuries suffered and the objective reasonableness of the officer's conduct."  Breen v. Garrison, 169 F.3d 152, 153 (2d Cir. 1999).

Here, plaintiff testified Officer Joyce "punched [him] to the ground" and then "punched him in the head" three times. (D. Mastromonaco Dep. at 194). In addition, Liebert testified that after plaintiff exited the vehicle he "was against the vehicle sitting down" (Liebert Dep. at 64) and "wasn't acting aggressively." (Id. at 65). Liebert did not see Officer Joyce punch plaintiff, but he testified he did not "see the incident between them because [the officers] had him in the car the whole time." (Id. at 20). Liebert also testified "the second officer" had an "aggressive tone." (Id. at 85).

A reasonable juror could credit plaintiff and Liebert's testimony over defendants' assertion that Officer Joyce did not punch plaintiff. Therefore, summary judgment is inappropriate with respect to plaintiff's excessive force claim as to Officer Joyce.

However, there is no evidence Sgt. Pavone or Officer Winsman personally were involved in Officer Joyce's alleged use of excessive force. "[T]o establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013).

Accordingly, plaintiff's excessive force claim will proceed against Officer Joyce, but otherwise is dismissed.

V.      Plaintiff's Fourth Cause of Action:  Unlawful Detention and Confinement

Defendants argue they are entitled to qualified immunity as to plaintiff's unlawful detention and conditions of confinement claim.

As an initial matter, plaintiff's unlawful detention claim is subsumed by his malicious prosecution claim, which the Court addresses in Section VIII, below. See Wallace v. Kato, 549 U.S. 384, 389–90 (2007) ("Reflective of the fact that false imprisonment consists of detention

without legal process, a false imprisonment ends once the victim becomes held <u>pursuant to such</u> <u>process</u>—when, for example, he is bound over by a magistrate or arraigned on charges. Thereafter, unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by <u>wrongful institution</u> of legal process.") (internal citations omitted).

Further, defendants are entitled to summary judgment regarding plaintiff's unconstitutional conditions of confinement claim.

The gravamen of plaintiff's claim seems to be that he should not have been transported to the Hospital, and once at the Hospital, should not have been handcuffed to his bed.

To establish a Fourteenth Amendment conditions of confinement claim, plaintiff must satisfy a two-prong test. First, plaintiff must show "the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process." <u>Darnell v. Pineiro</u>, 849 F.3d 17, 29 (2d Cir. 2017). Second, plaintiff must satisfy a "<u>mens</u> <u>rea</u> prong" by plausibly alleging the defendants acted with "at least deliberate indifference to the challenged conditions." <u>Id</u>.

There is no evidence to suggest defendants acted with deliberate indifference by transporting plaintiff to the Hospital. The following facts are undisputed: (i) plaintiff's behavior was "illogical" on November 7, 2013 (Pl. Resp. to Defs. 56.1 ¶ 30); (ii) Sgt. McNulty observed plaintiff speaking about penguins and Iranians; (iii) plaintiff failed to provide coherent answers to Sgt. McNulty's questions; and (iv) plaintiff did not respond each time Officer Winsman offered him a chemical test. Sgt. McNulty testified that as a result of plaintiff's behavior, he decided to "err on the side of caution and get [plaintiff] evaluated by a medical doctor." (Id. at 72).

Plaintiff's medical record reflects that while under observation in the emergency room he "gave bizarre answers," exhibited an "odd affect" and was "intermittently appropriate and then tangential with flight of ideas." (Martin Decl. Ex. 7 at 2). While plaintiff was at the Hospital, psychiatry staff examined him and deemed him "without decision making capacity." (Id.). Plaintiff's medical treatment plan reflects he was to be "admitted to psych inpatient once medically cleared." (Id.)

In view of the foregoing, no reasonable juror could conclude defendants' decision to transport plaintiff to the Hospital was deliberately indifferent.

With respect to plaintiff's assertion that he was "chained" to the bed while at the Hospital (Pl. Opp'n at 17), plaintiff's deposition testimony is he was "cuffed to the bed." (D. Mastromonaco Dep. at 140).

In evaluating the reasonableness of handcuffing, a court considers: (i) whether the handcuffs were unreasonably tight; (ii) whether defendants ignored plaintiff's pleas that the handcuffs were too tight; and (iii) the degree of injury to the wrists. Lynch ex rel. Lynch v. City of Mount Vernon, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008).

Here, there is no evidence to suggest plaintiff's handcuffs were too tight, he asked to have the handcuffs removed, or he was injured as a result of being handcuffed to the bed. Therefore, the use of handcuffs while plaintiff was at the Hospital does not amount to a constitutional violation.

Accordingly, plaintiff's conditions of confinement claim is dismissed.

VI.     Plaintiff's Fifth Cause of Action:  Excessive Bail

Defendants argue they are entitled to summary judgment as to plaintiff's excessive bail claim because they were not personally involved in setting plaintiff's bail.

The Court agrees.

Under the Eighth Amendment, "[e]xcessive bail shall not be required, nor excessive fines imposed." U.S. Const. Amend. VIII.

"In New York, the decision to set bail—and the amount at which it is set—is made by and at the discretion of the presiding judge." Sullivan v. City of New York, 2015 WL 5025296, at *8 (S.D.N.Y. Aug. 25, 2015) (citing N.Y. Crim. Proc. L. § 530.10 et seq.), aff'd, 690 F. App'x 63 (2d Cir. 2017). "Because the power to set bail is vested solely in the presiding judge, there can be no Eighth Amendment liability for a person who merely makes a recommendation regarding the appropriate level of bail." Id.

Here, the presiding judge was Justice Ponzini, who is not a defendant in this case. Accordingly, plaintiff's excessive bail claim is dismissed.

VII.    Plaintiff's Sixth Cause of Action: Unlawful Imprisonment

Defendants argue they are entitled to qualified immunity with respect to plaintiff's pre-arraignment unlawful imprisonment claim because they had probable cause to detain plaintiff.

The Court agrees.

An officer "is entitled to qualified immunity from a federal false . . . imprisonment claim if he had arguable probable cause to arrest the plaintiff for any offense." Kass v. City of New York, 863 F. 3d 200, (2d Cir. 2017). In addition, to constitute a deprivation of constitutional rights, "the detention must be sustained or prolonged." Lundt v. City of New York, 2013 WL 5298458, at *4 (S.D.N.Y. Sept. 20, 2013).

Here, defendants had at least arguable probable cause to arrest plaintiff, and he was detained for approximately four days.[3]  Four days is not an unconstitutionally prolonged period of time to be detained.  See Gonzalez v. New York City, 2016 WL 7188147, at *5 (S.D.N.Y. Dec. 2, 2016) (finding four day detention prior to arraignment "was not an unwarranted amount of time").

Plaintiff argues his detention was unlawful because defendants could have followed County procedures which permitted them to transport plaintiff to the Hospital, "hand him an appearance ticket, and leave him at the hospital to obtain, on his own, any medical attention that he might have needed."  (Pl. Opp'n at 16−17).  The County procedures permitted, but did not require, defendants to issue plaintiff an appearance ticket.  (See Martin Decl. Ex. 11: Dept. Manual § 110.01 ¶ 14 ("Desk Appearance Tickets may be issued to eligible persons when they have been arrested and processed at headquarters.")).  In any event, defendants' decision to detain plaintiff rather than issue him an appearance ticket does not amount to a constitutional violation.

Accordingly, defendants are entitled to qualified immunity, and plaintiff's unlawful imprisonment claim is dismissed.

VIII.    Plaintiff's Seventh Cause of Action: Malicious Prosecution

Defendants move for summary judgment with respect to plaintiff's malicious prosecution claim, and plaintiff moves for summary judgment with respect to his post-arraignment unlawful detention claim.

---

[3]      Plaintiff disputes that he was arraigned at the Hospital.  See Pl. Resp. to Defs. 56.1 ¶ 52. Thus, the Court assumes for purposes of this analysis that plaintiff was held without legal process for the entirety of his allegedly unlawful detention.

As set forth in Section V, above, plaintiff's unlawful detention claim is subsumed by his malicious prosecution claim.  Thus, the Court addresses it here.

A.    Plaintiff's Summary Judgment Motion

Plaintiff challenges the constitutionality of his detention past 12:45 p.m. on November 8, 2013, and his arraignment at the Hospital by Justice Ponzini.

For substantially the reasons set forth below, summary judgment in plaintiff's favor is not appropriate as to this claim.  To the contrary, summary judgment is appropriate in defendants' favor.  However, two aspects of plaintiff's motion merit additional discussion.

First, plaintiff contends the undisputed evidence shows he "was medically cleared to travel to the Town of Cortlandt for arraignment" as of 12:45 p.m. on November 8, 2013.  (Pl. Br. at 17).  Plaintiff's medical record states he "was discharged from [emergency department] observation status at 1245."  (Martin Decl. Ex. 7 at 2).  Plaintiff's medical record continues with the following notation, "Patient is medically clear for transfer for inpatient psych admission per psychiatry.  Called psychiatry who is aware of follow up."  (Id.)  Based on plaintiff's medical record, reasonable jurors could disagree over whether plaintiff was cleared to leave the Hospital at 12:45 p.m., or simply cleared for release from observation in the Hospital's emergency department.

Second, plaintiff argues Justice Ponzini had no jurisdiction over crimes committed in the Town of Cortlandt, and challenges Justice Ponzini's authority to arraign him.[4]  Justice Ponzini testified that he is a town justice in Mount Pleasant where the Hospital is located, and that any

_____

[4]    The Court notes the inconsistency between plaintiff's assertion that Justice Ponzini lacked authority to arraign him, and plaintiff's assertion that Justice Ponzini did not arraign him. Nevertheless, for purposes of this analysis the Court assumes that Justice Ponzini did arraign plaintiff.

time an arrestee is brought to the Hospital, he is "required by the administrative judge to go there and perform . . . arraignments." (Ponzini Dep. at 39−40).

Under Section 170.15(1) of the New York Criminal Procedure Law,

> when a defendant arrested by a police officer for an offense other than a felony, allegedly committed in a . . . town has owing to <u>special circumstances</u> and pursuant to law, not been brought before the particular local criminal court which by reason of the situs of such offense has trial jurisdiction thereof, but instead, before a local criminal court which does not have trial jurisdiction thereof, and therein stands charged with such offense by information, simplified information, or misdemeanor complaint, such local criminal court must arraign him on such accusatory instrument.

(emphasis added).

Here, plaintiff was not arrested for a felony offense, and was in Mount Pleasant on account of the special circumstance of his admission to the Hospital. In accordance with Section 170.15(1), plaintiff was arraigned on a misdemeanor information and a misdemeanor complaint by a judge with jurisdiction in Mount Pleasant.

Accordingly summary judgment in plaintiff's favor is not appropriate as to his unlawful detention claim.

B.      <u>Defendant's Motion for Summary Judgment</u>

Defendants argue they are entitled to summary judgment as to plaintiff's malicious prosecution claim because there was probable cause to believe plaintiff committed a crime.

The Court agrees.

To prevail on a Section 1983 claim for malicious prosecution, "a plaintiff must show a Fourth Amendment violation and establish the elements of a malicious prosecution claim under state law." <u>Roberts v. Babkiewicz</u>, 582 F.3d 418, 420 (2d Cir. 2009) (internal quotation omitted). To state a viable claim for malicious prosecution under Section 1983 in New York, plaintiff must show "(1) the initiation or continuation of a criminal proceeding against plaintiff;

(2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant[s'] actions." <u>Jocks v. Tavernier</u>, 316 F.3d 128, 136 (2d Cir. 2003).

Under New York law, even when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause. <u>Lowth v. Town of Cheektowga</u>, 82 F.3d 563, 571 (2d Cir. 1996). "[F]or probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact." <u>Id</u>. However, when "a court finds there was probable cause for an arrest, and in the absence of some indication that the authorities became aware of exculpatory evidence between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the arrest, no claim for malicious prosecution may lie." <u>Rodriguez v. City of New York</u>, 2012 WL 1059415, at *11 (E.D.N.Y. Mar. 28, 2012) (internal quotation omitted).

Here, as discussed above, there was at least arguable probable cause to support plaintiff's arrest for marijuana possession, and driving while under the influence of drugs, and the record is devoid of any intervening facts or evidence discovered after the time of the arrest that would suggest the charges against him were groundless. "Furthermore, defendants were under no obligation to attempt to exonerate plaintiff or to uncover exculpatory evidence." <u>Rodriguez v. City of New York</u>, 2012 WL 1059415, at *11.

Therefore, plaintiff's malicious prosecution claim is dismissed.

IX.     <u>Plaintiff's Monell Claims</u>

Defendants argue plaintiff's claims against the County must be dismissed because plaintiff fails to state a claim under <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978).

The Court agrees.

A.     Legal Standard

Under Monell, a municipality is liable under Section 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury."  Monell v. Dep't of Soc. Servs., 436 U.S. at 694.  Thus, to assert a Section 1983 claim against the County, plaintiff must show the existence of an official policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right.  Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012).

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following: (i) "a formal policy officially endorsed by the municipality"; (ii) "actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question"; (iii) "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware"; or (iv) "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees."  Brandon v. City of New York, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010).

"While Monell claims are not subject to a 'heightened' pleading standard beyond that defined in Rule 8(a)(2), such claims nevertheless must meet the plausibility requirements of Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 572 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 678, (2009)."  Guzman v. United States, 2013 WL 5018553, at *4 (S.D.N.Y. Sept. 13, 2013) (quoting Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993)).  "In other words, boilerplate allegations will not suffice."  Id. (internal quotation

omitted).  "[T]he allegations [a defendant] acted pursuant to a 'policy,' without any facts suggesting the policy's existence, are plainly insufficient."  Missel v. Cty. of Monroe, 351 F. App'x 543, 545–46 (2d Cir. 2009) (summary order) (citing Dwares v. City of New York, 985 F.2d 94, 100–02 (2d Cir. 1993)).

B.      Application

Plaintiff asserts Monell claims in connection with each of his first seven causes of action, and separately asserts claims for failure to train (eighth cause of action), and failure to supervise (ninth cause of action).

However, absent an underlying constitutional violation, a Monell claim cannot lie.  See Thomas v. City of New York, 562 F. App'x 58, 60 (2d Cir. 2014) (summary order) ("because [plaintiff] has not alleged a valid underlying constitutional deprivation, his claim against New York City pursuant to [Monell] must also fail").

The Court has held defendants are entitled to summary judgment with respect to all but plaintiff's excessive force claim.  Thus, the Court addresses the County's liability as to that claim only.

Here, plaintiff alleges a single incident of excessive force, which does not suffice to show a municipal policy or custom.  See Ricciuti v. N.Y.C. Transit Auth., 941 F.2d at 123.  Moreover, there is no evidence in the record otherwise to suggest Officer Joyce's alleged use of excessive force was pursuant to a municipal policy or custom.

Accordingly, plaintiff's Monell claims against the County are dismissed.

**CONCLUSION**

Plaintiff's motion for partial summary judgment is DENIED.

Defendants' cross-motion for summary judgment is DENIED as to plaintiff's excessive force claim against Officer Joyce, and GRANTED in all other respects.

The Clerk is instructed to terminate the motions. (Docs. ##88, 89).

All counsel are directed to appear at a status conference on October 5, 2018, at 9:15 a.m., at which time the Court will set a trial date and a schedule for pretrial submissions.

By September 24, 2018, the parties shall submit a Joint Pretrial Order in accordance with the Court's Individual Practices.

Dated: August 23, 2018
      White Plains, NY

                                SO ORDERED:

                                Vincent L. Briccetti
                                United States District Judge